Melissa MAXWELL, by Her Next Friend and Mother, Claudia Maxwell, Appellant,

v.

Sam FRAZE, Respondent.

No. 23186.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1961.

Maurice E. Benson, Kansas City, for appellant.

Dwight L. Larison (Hogsett, Houts, James, Randall & Hogsett) Kansas City, for respondent.

HUNTER, Presiding Judge.

This is a dog bite case. Plaintiff, Melissa Maxwell, 15 years old, obtained a jury verdict for $100 against defendant, Sam Fraze, because his two year old toy female Boxer dog, "Lady" bit her on her right thumb. The trial court sustained defendant's motion to set aside the jury's verdict and to enter judgment for defendant, and plaintiff appeals from the resultant judgment.

The question presented on this appeal is whether plaintiff made a submissible jury case. The principal controversy as presented by the parties is whether defendant kept a vicious dog after knowledge of her vicious propensities, and whether the injury complained of was the result of any such propensity.

In determining the question of submissibility of the case we must view the evidence in the light most favorable to the plaintiff. As so viewed if no case was made on the issues submitted to the jury then the judgment for defendant must be affirmed; otherwise it should be reversed and the jury's verdict ordered reinstated.

Plaintiff testified that on June 7, 1958, she and her mother went to a friend Golding's house as Lake Lotawana. The dog, "Lady", was around the premises. "Lady" belonged to defendant, a neighbor, who lived about four houses away. Plaintiff had been to Lake Lotawana on numerous previous occasions and was familiar with "Lady". She had often played with "Lady" on other occasions and had fed her. She knew the dog was welcome in the Golding house. She and her mother went into the house and "Lady" followed them in. They were sitting on a porch eating lunch with "Lady" nearby. "* * * we heard voices and the dog heard them, too, * * * and she rushed into the kitchen and tried to get out the door. * * * Well, I heard it start yowling like it was in pain, and I got up to see what was wrong. * * * The dog was crouching on the floor with both its front paws caught on the (screen) door and it was still yelling quite a bit, and I crossed over the kitchen to the door to see what was wrong, and I bent down to see how its feet were caught in the door, and how I could get them out of the door, whether it would be best to open the door or pull the dog out. I decided it wouldn't be a good idea to pull the dog out. * * * so I decided to open the door. I was stooped down with my right hand on my knee and I started to straighten up and open the door with my left hand when the dog bit me. I didn't realize at first it bit me until it went through my thumb nail."

Although she had played with "Lady" before, and "Lady" in play would grab her arm with her teeth "Lady" had never before bitten her. She didn't consider the dog ferocious or mean.

"Q. And you wouldn't have any fear of that dog now, would you? A. If the dog were not in pain or something of that nature. * * *

"Q. You would actually say this dog was just a playful dog, would you not? A. Yes, I would."

Plaintiff's mother, Mrs. Maxwell, testified that when she and her daughter arrived at the Golding home they saw "Lady" and petted and talked to her, and she followed them into the house. They were sitting on the porch, "and all of a sudden we heard this dog howling and yelping, and it seemed to be in extreme pain." Mrs. Maxwell knew the dog was in pain and that it might be dangerous to go near it. Her daughter went to see what was wrong and she did not see her get bitten. After her daughter was bitten Mrs. Maxwell opened the screen door freeing the dog's paws from where they were caught between the bottom of the door and the floor. She was able to do so without getting too close to the dog. The dog remained in the house until defendant came and got her.

Mrs. Maxwell from former visits knew the dog and was friendly with it. She had seen her daughter playing with "Lady" on prior occasions. She had never seen "Lady" attempt to bite anyone. She would not call "Lady" a ferocious or mean dog.

The only evidence relating to any past biting by "Lady" came from plaintiff and two neighbor ladies, all called as witnesses on behalf of plaintiff. They testified that defendant the following day came to see plaintiff and remarked about an earlier occasion when "Lady" had bitten him. Plaintiff testified, "He said the dog had jumped up and bitten him (in a fold of fat) on the side of the stomach. He said he slapped it in an effort to break it of bothering people again. I don't remember if he said in play. I don't believe he did." Mrs. Searle, a neighbor, testified she had heard the above statement by defendant. She didn't regard "Lady" as vicious. "Lady" was at her house every day. She feeds her all the time and is not afraid of her. Mrs. Andrae, a neighbor, testified she also heard defendant's mentioned statement. She thought defendant might have said "Lady" bit him on the side a couple of times. She has been around the dog quite a bit and from her observation "Lady" has a friendly disposition. She has often petted the dog and has never seen her snap or bite at anybody. She would say it was just a playful pet.

Defendant testified and explained the mentioned incident by saying, "I got to rough-housing and running with the dog * * * and had been throwing my arm more or less teasing at her, and she made a pass for my arm and more or less got hung up in my shirt and on my belt, and that is the biting. * * * "Q. Did that leave any marks or any scars or draw any blood or anything? A. No, Sir." Defendant adduced other evidence, not helpful to plaintiff, all to the effect that "Lady" was a friendly, playful dog who had never offered to bite, or injure anyone, including numerous children who frequently played with her.

■ In an action against the owner or harborer of a dog for injury inflicted by it an essential element of the cause of action is defendant's *scienter*, i. e. actual or constructive knowledge of the vicious or dangerous propensities of the dog. In numerous Missouri decisions on the subject it is stated, "the gist of the action is the keeping of a vicious dog after knowledge of his vicious propensities." Clinkenbeard v. Reinert, 284 Mo. 569, 578, 225 S.W. 667, 669, 13 A.L.R. 485; State ex rel. Kroger Co. v. Craig, Mo.App., 329 S.W.2d 804; Annotation, 17 A.L.R.2d 459, 460; 3 C.J.S. Animals § 148, p. 1248. Of course, the injury complained of must result from the exercise of the dangerous propensity.

■ Occasionally decisions appear to pay lip service to the trite phrase that every dog is entitled to one bite, and, inferentially that after one bite his owner or keeper is liable for any additional ones. This is not the law, and is not supported by the decisions. It is not necessary for the dog to have bitten someone before if the dog has demonstrated a vicious propensity for biting. The controlling element is not whether it is a first bite but whether the dog has a vicious propensity for biting known to its keeper. On the other hand,

the bare fact of a prior bite does not of itself establish the vicious propensity. The circumstances surrounding the occasion of the biting and its extent demonstrate whether the incident of the prior bite is sufficient evidence or some evidence of a vicious propensity of the dog to inflict injury.

█ Plaintiff has the burden of proof. As stated in Merritt v. Matchett, 135 Mo. App. 176, 115 S.W. 1066, 1068, "The burden is on the plaintiff to prove that her injury was the direct result of a vice of the animal of which defendant had notice." Plaintiff has admitted that the dog is a friendly one, well known to her, and that she, even after the incident in question would not term it to be a vicious dog. The circumstances to which plaintiff has testified demonstrate that the biting of her occurred when the dog was in severe pain while caught in the door. This incident, as related by plaintiff and by her witnesses does not demonstrate that the dog was vicious or had any vicious propensity. The bite obviously did not arise out of any vicious propensity of the dog, but, instead, arose under circumstances in which any dog, in extreme pain and not understanding the cause of his predicament, might in painful frenzy bite a hand voluntarily placed too near him.

█ We have examined all of the evidence, from whatever its source, that might aid plaintiff in establishing her cause of action, and after giving her the benefit of it and of all reasonable inferences therefrom have concluded that it is insufficient to permit a jury finding on the required elements of keeping a vicious dog after knowledge, active or constructive, of its vicious propensities and that her injury was the direct result of such vice of the dog. The trial court did not err in entering judgment for defendant.

The judgment is affirmed.

All concur.