Stacey Lynn SWAIN, by her Next Friend and Natural Father, Michael L. SWAIN, and Michael L. Swain, Individually, Plaintiffs-Appellants,

v.

Howard A. SIMON, Kathy L. Simon, Andrew J. Simon, and Dorothy Simon, Defendants-Respondents.

No. WD 36339.

Missouri Court of Appeals, Western District.

Sept. 17, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Oct. 22, 1985.

Robert B. Reeser, Jr., Sedalia, for plaintiffs-appellants.

Paul D. Cowing, Mary A. Estes, Kansas City, James T. Buckley, Sedalia, for defendants-respondents.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

BERREY, Judge.

Andrew and Dorothy Simon, husband and wife, live in rural Pettis County, where they are engaged in farming. Their two children, Howard and Kathy, are grown and come and go from the farmstead. Howard was the owner of a part golden retriever-collie dog, Champ, that he kept at the farm. It was a medium-sized dog.

On May 1, 1982, Howard was in Texas on his honeymoon and Champ was on the farm. Kathy called her mother and said she was coming out and bringing Stacey, the five year old daughter of Michael and Dollie Swain. Kathy was babysitting Stacey for the Swains.

Kathy and Stacey pulled up to the Simons' farm and got out of the car. The dog, Champ, started walking towards them and Kathy took Stacey's hand. They both stopped and petted the dog. As Kathy and Stacey turned to go into the house Stacey ran ahead of Kathy. At that point, Champ knocked down Stacey from the back and began mauling her.

Dorothy Simon first knew that something had happened when she heard Kathy scream. She ran to the door and saw the dog near Kathy and Stacey. Mrs. Swain called to Champ who then backed off. Kathy carried Stacey into the house and cleaned her up and Mrs. Simon drove them to the hospital. Stacey sustained lacerations to the scalp and left ear, puncture wounds in the right cheek and left ear, and some abrasions.

At Bothwell Hospital they waited two hours for treatment. At one point an intern passed and said, "It's just a dog bite, she is not going to die." Mrs. Simon testified that the hospital would not let her get cold washrags from the emergency room and that the bleeding finally stopped.

Mrs. Simon testified she had never seen Champ bite, chase, or lunge at anyone before. She had never heard him snarl or growl at anyone, never saw him hackle, bare his teeth, act mean, snap or nip at anyone. No complaints had ever been received about Champ and he'd never shown signs of being vicious.

G.L. Morris, who farms near the Simons' place, testified that he had seen Champ on numerous occasions; that he could not recall whether Champ barked or not when he would pull in the Simons' farm to visit; and that he never heard of the dog jumping or knocking down or biting any little children except the instant case. Morris testified he had heard no reports that would cause him to believe the dog was mean.

A neighbor of Simons', living one-fourth to one-half mile north on the same gravel road, James DeMotte, was the next witness for plaintiffs. He testified he had never known Champ to fight with other dogs, but he had seen Champ wrestle with a dog belonging to John Farris. He didn't recall Champ barking at him unless he had his dog in the pickup. DeMotte stated in his opinion Champ was a basic gentle farm dog. His son, fourteen years of age, and daughter, four years of age, have been

around Champ and he never warned them about Champ. He felt they were safe around Champ.

Mary DeMotte, wife of James testified she had seen Champ run with her father's dog in the pasture and down the road. Champ and her father's dog engaged in "playful scuffle" and she never saw either dog snap while so engaged. Mrs. DeMotte testified she never saw Champ bite, growl, bare his teeth, threaten anyone, nor act mean or vicious toward any person or another dog.

Jack McGinnis testified similarly to Mr. DeMotte and his testimony failed to shed additional light helpful to the plaintiffs on this dog's vicious propensities. He couldn't remember Champ barking at him or as he would drive by. He stated the dog had not threatened him, caused him trouble, or been aggressive or threatening to his children. He never saw the dog show his teeth or bite anyone. In fact, Mr. McGinnis stated that on one occasion his dog jumped from the back of his pickup truck onto Champ and Champ simply ran into the house showing no signs of aggression.

Mrs. Swain testified that she engaged Kathy Simon to babysit Stacey while she went to a soccer game in Kansas City. She knew Kathy was babysitting Stacey as a friend and was not being compensated. Mrs. Swain also knew Kathy was going to take Stacey to the farm. She had never seen the dog and had not heard anything about Champ being dangerous.

Mrs. Swain also stated Stacey now has scars on the back of her head, and Stacey bites her fingernails. Although there was some reference to Stacey now having a fear of large dogs, there was some evidence she wanted a small dog as a pet.

Michael Swain, an agent for Shelter Insurance Company, testified that Kathy told him she and Stacey arrived at the farm, exited the car and walked to the house. The dog came up to them and she grabbed hold of Stacey's hand and they both petted the dog. They turned toward the house and Stacey ran off ahead of Kathy at which time Champ put his paws on Stacey's back, knocked her down, and started mauling her.

Mr. Swain stated Kathy told him neither of them had done anything to the dog. There was some dispute between counsel over whether or not Kathy Simon had said that the dog had never liked her. This statement does not appear in the transcript of the case and the depositions have not been filed. Likewise, counsel's reference to the dog biting its master, Howard Simon, while the two were roughhousing is not supported by testimony at trial. As a result of not having the benefit of the discovery it is impossible for the court to be fully advised. Standing alone the counsel's statement is not persuasive.

A jury trial began on June 5, 1984, before Judge Donald Barnes. The judge sustained a Motion for Directed Verdict at the close of the plaintiffs' case. Plaintiffs filed a Motion to Vacate Judgment or Alternatively Motion for New Trial on June 14, 1984. On August 17, 1984, prior to a decision on the above motion, Judge Barnes disqualified himself. The Supreme Court then appointed Judge William Bellamy on August 31, 1984. Judge Bellamy subsequently denied plaintiffs' motion for new trial.

■ Plaintiffs argue that it was an abuse of discretion for the successor judge to deny the motion for a new trial pursuant to Rule 79.01 because he did not have an opportunity to hear the evidence; did not have the transcript available to him; and no findings of fact were made.

Rule 79.01 states in part that "if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial." Implicit within this rule is that the successor judge also has discretion to deny the plaintiffs' motion for new trial.

The order from the Honorable Judge Bellamy stated:

> The Court finds it impossible to rule on Plaintiffs' Motion inasmuch as the question involved is the sufficiency of the

evidence to make a submissable (sic) case and there is no transcript available for the Court to review. The Court further believes it improper for this Judge to pass upon the question for the reason that in any case all a party anticipating an unfavorable ruling on a motion for a new trial would have to do would be to disqualify the trial judge "after the fact."

While strongly believing it improper to rule upon the Motion for the reasons stated, to settle the question of when the ninety day period has run after which the motion will automatically be overruled, Plaintiffs' Motion to Vacate Judgment, or Alternatively For New Trial, is hereby overruled and denied.

The plaintiffs argue that in the instant case since Judge Bellamy had no transcript to review, it was improper for him to deny the motion for new trial. The discretionary language, however, allows the successor judge to deny the motion and that discretion is properly exercised when the case is readily reviewed here on the full record.

Plaintiffs claim error by the trial court in sustaining the defendants' motion for directed verdict at the close of the plaintiffs' evidence. As a general rule, evidence is viewed in light most favorable to plaintiff for purposes of a motion for directed verdict and plaintiff is given the benefit of favorable inferences. *Nixon v. Life Investors Ins. Co. of America,* 675 S.W.2d 676, 678 (Mo.App.1984). Taking plaintiffs' evidence as true, however, in this instance does not provide for a prima facie case.

■ There are two issues needed to present a submissible case: (1) plaintiff must establish the dog had vicious or dangerous propensities and (2) plaintiffs must show that the owner of the dog had knowledge of the dog's vicious propensities. *Crimmins v. Mirly,* 675 S.W.2d 663, 664 (Mo.App.1984). Evidence of a dog's barking, running loose, jumping and lunging do not bear on the fact of viciousness but rather they are all activities in which all dogs engage. *Frazier v. Stone,* 515 S.W.2d 766, 769 (Mo.App.1974).

■ The evidence presented by plaintiffs that Champ chased a motorcycle, and growled when he was penned up with some cattle does not establish that the dog had vicious or dangerous propensities.

Plaintiffs suggest that any tendency of a dog to injure persons, whether the dog acts from a purpose to do bodily harm, from ill-temper, or only playfulness, is a dangerous propensity for which a keeper who has reason to know such habit will be liable, *Boosman v. Moudy,* 488 S.W.2d 917, 920 (Mo.App.1972). Plaintiffs allege this theory is supported by counsel's statement that Champ bit Howard Simon while roughhousing. As previously suggested this was not persuasive. No testimony was submitted at trial nor were the depositions filed. Furthermore, the defendants in the *Boosman* case were notified repeatedly of the dog's tendencies to growl, snap, and jump at various persons. *Id.,* at 919. Five separate witnesses called by plaintiffs, including Mrs. Simon, testified that they had never seen Champ bite, growl, show his teeth, or act vicious toward anyone. Hence, reasonable men could not conclude that Champ had vicious tendencies and that the defendants had knowledge thereof.

Plaintiffs also contend that the trial court erred in granting a directed verdict at the close of the plaintiffs' evidence as there was sufficient evidence for a prima facie case of negligent supervision by Kathy Simon, defendant.

■ The duty of defendant was to exercise reasonable or ordinary care in the supervision of plaintiff. *Kersey v. Harbin,* 591 S.W.2d 745, 749 (Mo.App.1979). More vigilance and caution might be required, however, in the exercise of ordinary care when a child is involved and there exists a potentially dangerous condition which a supervisor is or should be aware. *Smith v. Archbishop of St. Louis,* 632 S.W.2d 516, 522 (Mo.App.1982); *Bronson v. Kansas City,* 323 S.W.2d 526, 531 (Mo.App.1959).

■ The breach of that duty, however, involves whether a reasonable person could

have foreseen that the injuries of the type suffered would likely occur under the circumstances. *Archbishop of St. Louis, supra*, at 521.

In the instant case, looking at all of the evidence presented by plaintiffs in the most favorable light, it did not rise to the level of a submissible case. By taking Stacey's hand as the dog approached, Kathy Simon comprehended the danger that would ordinarily be perceived when a small child and a dog, dangerous or not, are within close proximity. Her fears were seemingly put to rest as she and Stacey petted the dog. There was no evidence that the dog growled, snarled, or was angered or provoked by this "exchange." Therefore, as Stacey ran ahead, Kathy could not have reasonably foreseen that the dog was likely to attack Stacey and create the resulting injuries.

This court also finds no prejudicial error or abuse of discretion in the trial court judge reading certain depositions before trial or in his ex parte contact with plaintiffs' attorney inquiring into the possibility of out of court settlement of the case. Where the disclosure of possible bias arises after the time for the required notice, see Rule 51.05, there should be some evidence that this prejudice does in fact exist. *City of St. Louis v. Boos*, 503 S.W.2d 133, 136 (Mo.App.1973). The record fails to reveal that the judge was unable to afford the plaintiffs a fair and impartial trial. Granting a motion for directed verdict where the evidence does not in fact make a prima facie case does not shore up this allegation.

Examination of certain depositions prior to trial is not dissimilar from the reviewing of evidence that often takes place out of the presence of the jury to obviate any harm which might occur if introduced into the record in front of the jury. *Wilkins v. Cash Register Service Co.*, 518 S.W.2d 736, 745 (Mo.App.1975). Therefore, the reading of all or part of the deposition prior to trial by the trial judge was not prejudicial.

On his inquiry into a possible settlement of the case, the trial court judge noted to plaintiffs' attorney that he may have difficulty in making a submissible case. Without reaching the question of judicial ethics, the trial judge's conduct did not rise to the level of prejudicial error. Plaintiffs have not shown they were harmed by this conduct. In fact, the judge's conduct could be viewed as aiding the plaintiffs to the detriment of the defendants.

Finally, plaintiffs contend that portions of Andrew Simon's and Howard Simon's depositions were erroneously excluded as they were admissions on relevant material issues. Plaintiffs' reliance on *White v. Burkeybile*, 386 S.W.2d 418 (Mo.App.1965), which states that a statement of a party is competent as an admission against interest even if it bears on the issue only incidentally or circumstantially, *Id.*, at 422, is misplaced. The evidence presented was directed to prove immaterial issues and is not material to the issues in the case. *See Willoughby v. Jamison*, 103 F.2d 821 (8th Cir.1939), *cert. denied*, 308 U.S. 588, 60 S.Ct. 111, 84 L.Ed. 492 (1939).

As previously mentioned, the vicious propensities of the dog and the knowledge of those vicious propensities on the part of the owner are the two issues necessary to establish a submissible case. *Crimmins, supra*, at 664. The facts that the dog "just lays around" because he was depressed since Howard left the farm; that the dog showed his teeth when he was penned up with the cattle; that the dog was trained to hunt; that the dog fought with a neighboring dog who came onto the Simons' property were not material to the above issues. These are not admissions against interest concerning vicious or dangerous propensities against human beings. They are only "indicative of the general characteristics and instincts of dogs." *Crimmins, supra*, at 665.

Similarly, there was no reversible error in excluding excerpts from the deposition of Kathy Simon. As noted earlier, taking all the evidence presented by plaintiffs to

prove negligent supervision by Kathy Simon, plaintiffs still did not prove a *prima facie* case. Therefore, any error, if there was error, was harmless.

Judgement affirmed.

All concur.