# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-00932-SCT

*WANDA H. MONGEON*

*v.*

*A & V ENTERPRISES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/92 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARK H. WATTS |
| ATTORNEY FOR APPELLEE: | W. LEE WATT |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 8/7/97 |
| MOTION FOR REHEARING FILED: | 8/21/97 |
| MANDATE ISSUED: | 12/30/97 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The matter before this Court involves an appeal from the trial court's grant of a motion for a judgment notwithstanding the verdict in favor of the defendant, A & V Enterprises. We conclude that there was credible evidence from which a jury could conclude that A & V Enterprises had actual or constructive notice of the dangerous propensities of Brian Brown's dogs. Thus, we reverse the decision of the trial court.

## I.

¶2. On January 17, 1990, the appellant, Wanda H. Mongeon, was attacked by two black Labrador retrievers that belonged to Brian Brown while walking from her trailer to the washateria on the premises of Anchor Trailer Park which is owned and operated by the appellee, A & V Enterprises, Inc. Mongeon was bitten several times, and attempted to escape by climbing the fence surrounding the children's playground, which was located between her trailer and the washateria. When she attempted to get over the fence, the fence broke and she fell on her head. Immediately after the attack, Mongeon was taken to the hospital for her injuries.

¶3. She was treated for numerous bite wounds. She also received an anterior cervical fusion and

diskectomy for the injuries to her neck that she sustained from the fall. Mongeon sued Brown and the owner of the trailer park, A & V Enterprises, for compensation for her injuries. There is no dispute that Brown's dogs attacked Mongeon. The only dispute that was presented is whether Brian Brown and A & V Enterprises had actual or constructive knowledge of the dangerous propensities of Brown's dogs.

¶4. The jury returned a verdict against A & V Enterprises in the amount of $50,000. A & V moved for judgment notwithstanding the verdict. After hearing an extensive presentation of both parties' arguments, the trial court granted A & V's motion for judgment notwithstanding the verdict on the grounds that there was "absolutely nothing" in the record to show that A & V had any notice that Brian Brown's dogs were dangerous. From the trial court's grant of A & V's motion for judgment notwithstanding the verdict, Mongeon, appeals.

## II.

### a.

¶5. It is well-settled that in order for an owner to be exposed to liability for an attack by his animal:

> [T]here [must] be some proof that the animal has exhibited some dangerous propensity or disposition prior to the attack complained of, and, moreover, it must be shown that the owner knew or reasonably should have known of this propensity or disposition and reasonably should have foreseen that the animal was likely to attack someone.

*Poy v. Grayson*, 273 So. 2d 491, 494 (Miss. 1973). In this case, A & V Enterprises holds the position of lessor of a trailer park, where a dog attack occurred within an area designated for the common use by the inhabitants of the trailer park.

¶6. In *Wilson v. Allday*, 487 So. 2d 793, 796 (1986), this Court stated that "where the lessor reserves control over a designated area for common use of tenants and is negligent, [the] lessor is liable for resulting injury." However, in order for the lessor to be held liable, he or she "must have actual or constructive knowledge of the defect [or condition] and a sufficient opportunity to repair the same." *Id.* (citing *Turnipseed v. McGee*, 236 Miss. 159, 109 So. 2d 551 (1959)). Thus, in order for A & V Enterprises to be held liable for Mongeon's injuries, it must have had actual or constructive notice of the dangerous propensities of Brown's dogs.

¶7. The trial court granted the appellee's motion for a judgment notwithstanding the verdict of the jury based on its view that there was nothing in the record to show that A & V Enterprises had any notice that Brian Brown's dogs were dangerous. The appellant, however, asserts that she proved by a preponderance of the evidence that A & V Enterprises knew or reasonably should have known of the dangerous propensities of Brown's dogs and thus, the verdict of the jury was not inconsistent with the evidence presented and the instructions given by the court.

¶8. A "motion for J.N.O.V. tests the legal sufficiency of the evidence supporting the verdict." *Goodwin v. Derryberry*, 553 So. 2d 40, 42 (Miss. 1989) (quoting *Stubblefield v. Jesco*, 464 So. 2d 47, 54 (Miss. 1984)). "[T]his Court considers the evidence in the light most favorable to the party against whom the motion has been made, disregarding any evidence on the part of the movant, which

is conflicting." ***Bruner v. University of Southern Mississippi***, 501 So. 2d 1113, 1116 (Miss. 1987). If there is credible evidence from which the jury may draw reasonable inferences supporting the jury's verdict, such verdict must withstand a motion for judgment notwithstanding the verdict. ***Id.*** (citing ***Bay Springs Forest Products, Inc. v. Wade***, 435 So. 2d 690, 693 (Miss. 1983)).

¶9. On behalf of Mongeon, Donna Nelson testified that she informed both Kay Wells, the resident manager of the trailer park and Robert Hooks, a minority shareholder of A & V and manager of the trailer park, of an incident involving dogs which growled at her near the washateria area of the trailer park and another incident in which three dogs approached her little dog. Nelson further testified that Wells responded by asserting that "Brian Brown's dog was not dangerous . . . [however], she would see to it that it was tied up."

¶10. The question is whether these incidents constituted an exhibition of "some dangerous propensity or disposition." This Court has not defined the behavior which constitutes an exhibition of a dangerous propensity. We find helpful analysis of the issue rendered by some of our sister states.

¶11. In ***Boosman v. Moudy***, 488 S.W.2d 917 (Mo. 1972), the Missouri Court of Appeals stated that "[a]ny tendency of a dog to injure persons, whether the dog acts from a purpose to do bodily harm, from ill-temper, or only playfulness, is a dangerous propensity for which a keeper who has reason to know of such habit will be liable." ***Id.*** at 920 (citing ***Dansker v. Gelb, Mo.***, 352 S.W.2d 12, 16-17 (Mo. 1961)). Similarly, in ***Farrior v. Payton***, 57 Haw. 620, 562 P.2d 779 (Haw. 1977), the Supreme Court of Hawaii stated:

> [t]he terms 'vicious propensities' and 'dangerous propensities' have been defined as '(a)ny propensity on the part of the dog, which is likely to cause injury under the circumstances in which the person controlling the dog places it . . . and a vicious propensity does not mean only the type of malignancy exhibited by a biting dog, that is, a propensity to attack human beings.'

***Id.*** at 627, 562 P.2d at 785 (citing 3A C.J.S. *Animals* 199, at page 701 (1973); ***Dansker v. Gelb***, 352 S.W.2d at 16-17. Under this standard, the Hawaii court found that the defendant's German shepherd dog, known to have run and barked on numerous occasions at all strangers coming near their property, exhibited vicious propensities, although there was no evidence that their dog had ever bitten anyone. ***Farrior v. Payton***, 57 Haw. at 630, 562 P.2d at 786. The evidence of barking and chasing was deemed sufficient to present to a jury the issue of whether the owners of the dog were negligent and liable for the plaintiff's injuries which resulted from her attempt to escape from the defendant's dog. ***Id.*** at 632, 562 P.2d at 787.

¶12. Following these standards, a reasonable jury could have found that the incident in which Brown's dogs growled at Donna Nelson near the washateria constituted an exhibition of a dangerous or vicious propensity by Brian Brown's black Labrador retrievers. Considering the evidence in the light most favorable to Mongeon, there is credible evidence from which the jury may have drawn a reasonable inference supporting its verdict. The trial court's grant of A & V Enterprises's motion for a judgment notwithstanding the verdict was unwarranted and must be reversed.

¶13. **REVERSED AND RENDERED.**

**PRATHER AND SULLIVAN, P.JJ., McRAE AND MILLS, JJ., CONCUR. SMITH, J.,**

**DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., PITTMAN AND ROBERTS, JJ.**

SMITH, JUSTICE, DISSENTING:

¶14. I agree that the standards for landlord liability require a landlord such as A & V to use reasonable care to keep common areas reasonably safe for the tenants, invitees or business visitors. However, a landlord cannot be held liable for injuries sustained in the common areas without actual or constructive knowledge of a dangerous condition. Obviously, if A & V knew, or should have known of the dangerous condition and concealed the condition or failed to notify the tenants about such condition, then A & V is subject to liability. Thus, A & V can only be liable to Mongeon if it knew or reasonably should have known of Brian Brown's two dogs' dangerous nature or propensities prior to the attack which caused the injuries to Mongeon. Considering the evidence in the light most favorable to Mongeon, it is absolutely clear that no credible evidence exists which showed that A & V Enterprises had actual or constructive notice of the dangerous propensities of Brian Brown's two dogs, therefore, A & V may not be held liable. *Wilson v. Allday*, 487 So. 2d 793, 796 (Miss. 1986) (*citing* *Turnipseed v. McGee*, 236 Miss. 159, 109 So. 2d 551 (1959). Because I do not share the majority view that the trial court erred in granting the JNOV and that this case should be reversed and rendered, I respectfully dissent.

¶15. Mongeon supposedly offered three witnesses, Dale Robinson, Donna Nelson, and Nancy McClaine, to prove actual or constructive notice to A & V about the Brown's dangerous dogs. In fact, only Nelson testified about prior incidents concerning any dogs wherein supposedly notice was given to A & V. Both Robinson and McClaine positively testified that they had never informed A & V management of prior incidents with dogs.

¶16. Nelson's testimony, as properly noted by the trial judge, proved "absolutely nothing" to show that A & V had any prior notice that Brown's dogs were dangerous. Nelson testified about an incident involving dogs growling at her near the washateria area. She also mentioned another incident where three dogs approached her little dog. She claimed that she stomped her feet and chased them away. What does this prove? Only that two dogs of unknown identify and ownership growled at Nelson on the first occasion and that some dogs were running loose on A & V's common premises on the second occasion. Nelson admittedly had no personal knowledge that the dogs that growled at her were the same dogs that belonged to Brown. When shown an actual picture of Brown's dogs, Nelson could not identify the dogs as being those belonging to Brown. Nor could Nelson identify Brown as being the man she talked to concerning the incident with the dogs. Nelson admitted that she did not inform A & V management that the dogs were Brown's dogs, nor that the dogs were dangerous. Even if Nelson had properly informed A & V and definitely identified the dogs involved as belonging

to Brown, the "dangerous propensity or disposition" required by the Court has not been established. This Court, in *Poy v. Grayson*, 273 So. 2d 491 (Miss.1973), stated:

> There is considerable diversity among the Courts of the several states as to the conditions under which liability may be imposed in cases of this kind. However, we believe the sounder rule requires that there be some proof that the animal has exhibited some dangerous *propensity* or *disposition* prior to the attack complained of, and, moreover, it must be shown that the owner knew or reasonably should have known of this propensity or disposition and reasonably should have foreseen that the animal was likely to attack someone.

> A careful examination of the record has convinced us that the evidence was not sufficient to support a finding (1) that prior to plaintiff's having been bitten that the puppy had exhibited a vicious or dangerous disposition or (2) that there was any conduct on its part or any incident involving it which could be reasonably considered as having put Poy on notice or enabled him reasonably to foresee that it was likely to attack or bite anyone.

*Poy*, 273 So. 2d at 494. (Emphasis added).

¶17. The majority's authoritative cases include *Boosman v. Moudy*, 488 S.W. 2d 917 (Mo. Ct. App. 1972), *citing* **Dansker v. Gelb,** 352 S.W. 2d 12, 16(5)(Mo. 1961) and *Farrior v. Payton*, 57 Haw. 620, 562 P. 2d 779 (Haw. 1977). The *Boosman* court noted that "[a]ny tendency of a dog to injure persons, whether the dog acts from a purpose to do bodily harm, from ill-temper, or only playfulness, is a dangerous propensity for which a keeper who has reason to know of such **habit** will be liable." *Id.* at 920(*citing* **Dansker**, 352 S.W. 2d 12, 16(5) (Mo. 1961). (Emphasis added). In *Boosman*, the record revealed evidence of numerous complaints of the dog's "ill-natured" behavior including the *menacing habit* of growling, bristling, and snapping at people. *Boosman*, 488 S.W. 2d at 919-921. In *Farrior*, the court found that [t]he defendant's German shepherd dog which was **known to have run and barked on numerous occasions** at all strangers coming near their property **exhibited vicious propensities** although there was no evidence that their dog had ever bitten anyone. *Farrior*, 57 Haw. at 630. 562 P.2d at 786. (Emphasis added). The court also noted the dog's "natural fierceness or **disposition to mischief as might occasionally lead him to attack human beings without provocation.**" *Farrior*, 57 Haw. At 627, 562 P. 2d at 785.

¶18. The majority, based on these cases, writes that "Following these standards, a reasonable jury could have found that the incident where Brown's dogs growled at Donna Nelson near the washateria constituted an exhibition of a dangerous or vicious propensity by Brian Brown's black Labrador Retrievers. *Majority* at 6. Even if true, the one prior incident as described by Nelson is insufficient to meet the *Poy* criteria. The majority ignores the fact that Nelson could not identify the dogs involved in the single prior incident with her as actually being Brown's dogs. The majority forgets that in each of its cited authoritative cases, sufficient evidence of habit, disposition or propensity was clearly demonstrated, whereas in the case at bar, there is a lack evidence in this record of the prior dangerous or vicious propensity of Brown's dogs.

¶19. Other courts have also considered this issue and likewise held the necessity of proof of a prior dangerous or vicious propensity by the dog actually involved in the incident. In *Maxwell v. Fraze*, 344 S.W. 2d 262, 264 (Mo. Ct. App. 1961), the court held that evidence on the issue as to whether the defendant harbored a vicious dog after obtaining knowledge of the dog's **vicious propensities**,

and that the plaintiff was injured as a result of the defendant's harboring of such dog, was insufficient to permit the case to be taken to a jury. The court noted that, " [T]he controlling element is not whether it is a first bite but whether the dog has a vicious propensity for biting known to its keeper. On the other hand, the bare fact of a prior bite does not of itself establish the vicious propensity. The circumstances surrounding the occasion of the biting and its extent demonstrate whether the incident of the prior bite is sufficient evidence or some evidence of a vicious propensity of the dog to inflict injury." *Maxwell*, 344 S.W. at 264. In *Giaculli v. Bright*, 584 So. 2d 187, 189 (Fla. App. 5th Dist. 1991), the court, in finding a genuine issue of material fact existed as to whether the owners of an apartment complex had knowledge of the vicious propensities of a pit bull so as to preclude summary judgment for the owners and management of the apartment complex, held that the dog had been barking and lunging at children, "particularly in light of the characteristics of pit bulls, is sufficient for a jury to reasonably conclude that the landlord was on notice of the vicious propensity of the dog." *Id*. at 189.

¶20. More importantly, this Court in *Poy* clearly required that, "[t]here be some proof that the animal has exhibited some dangerous propensity or disposition prior to the attack complained of. . ." *Poy,* 273 So. 2d at 494. The majority hangs everything on a single incident, based upon unreliable, impeached, and refuted testimony of Nelson, who could not even identify the growling dogs as belonging to Brown. The majority simply misses the point of all of these cases - that there must be prior demonstrated vicious or dangerous propensity, disposition, or habit demonstrated by the actual dog involved in the incident. The three key words utilized in each of these cases are disposition, habit and propensity. The cases all contemplate more than a single prior incident is necessary. At least in this Court's *Poy* case, as well as *Maxwell* the facts revealed a "first bite," and yet both courts still found that the controlling element was not the first bite, but rather whether the dog had a vicious disposition or propensity. In the case at bar there is no "first bite." The three key words used by the various courts in the cases cited by the majority as well as this dissent have similar meanings and are interchangeable. A quick visit to Webster's is indeed revealing. Disposition is defined as, "the prevailing tendency, aspect, mood, or inclination of one's spirits." Habit is defined as, "a behavior pattern acquired by frequent repetition or regularity." Propensity is defined as, "a natural inclination: innate or inherent tendency." *Webster's Third New International Dictionary*, 1971. The case at bar is lacking of any evidence offered by Mongeon which demonstrated in Brown's dogs a disposition, propensity, or habit of being dangerous, which facts were known by A & V prior to the attack upon Mongeon.

¶21. The standard is clear. Mongeon's proof of prior dangerous propensity of Brown's dogs and knowledge by A & V, supposedly demonstrated by Nelson's meager testimony is severely lacking. There was no credible evidence from which the jury could draw a reasonable inference supporting its verdict.

¶22. The trial court was correct in granting the JNOV. In fact, the lower court should have granted a directed verdict at the conclusion of the plaintiff's case in chief, as clearly reflected by the trial judge's comments during the hearing on the Motion for JNOV. Judge Jackson stated:

> I came within half an inch of granting a directed verdict at the end of the plaintiff's case because I didn't feel like there was sufficient evidence to keep A & V in it. I think I made a mistake by not doing that. But the Court's reasoning at that time was that Mr. Brown would be stuck with

nothing, no lawyer, no anything to defend himself. And I think I did a disjustice to A & V by leaving them in at that point.

¶23. All of which raises another interesting question. Why was there a $50,000 verdict against A & V for supposedly having knowledge of Brown's dangerous dogs with their vicious propensities, and then, Brown absolved by the jury of any finding of liability? Mongeon failed to even appeal the verdict in favor of Brown. The proof against Brown was much more substantial than that against A & V. Talk about irreconcilable verdicts! This one is appalling, confusing and indicative of sympathy of the jury in favor of Mongeon as well as the jury going after the deep pockets of the business of the owner instead of the owner of the dogs. Also, less we forget, Brown was proceeding pro se. Even Judge King was concerned about this factor, as she admitted that it influenced her decision in failing to grant A & V a directed verdict and yet, Brown is charged with knowledge of the Court's rules, regardless that he was proceeding pro se.

¶24. And then, there was A & V's written policy allowing residents to have pets so long as they were no more than ten inches high. This policy had been subject to several exceptions allowing larger pets on condition that they be confined within a fenced area. Exception to the rule was not only granted to Brian Brown, but also to the plaintiff Mongeon, whose pet just happened to be a dog that came from a litter of puppies from Brown's dogs. Mongeon testified she had never observed Brown's dogs outside their fenced area and had experienced no prior problems with them. Robert Hooks, general manager of A & V, testified that stray dogs were a problem at the trailer park and that he had authorized the Animal Control Division of the Gautier Police Department to patrol and pick up strays or loose dogs. He had encouraged tenants to call the animal control officer to report stray dogs. What more could A & V have done considering the limited knowledge the business had received about loose dogs on their premises?

¶25. The majority reminds us that in Mongeon's escape over the fence after the attack by the dogs, she received "an anterior cervical fusion and diskectomy for the injuries to her neck that she sustained from the fall." *Majority* at 2. Yet, the record reveals, although taken to the hospital immediately, she was only treated there for dog bites. Mongeon never complained of head or neck pain from the fall while in the emergency room. In fact, it was one and a half years later, on August 28, 1991, when she first consulted orthopaedic surgeons, Dr. Hudson and Dr. Winters. More importantly, Mongeon failed to relate her prior medical history to her two treating physicians who ultimately testified. Had the two physicians known her complete medical history, would their opinion of her have been affected? Mongeon failed to reveal the following: (1) She failed to disclose that she had been involved in an auto accident in September 1988; (2) She failed to disclose that she was hit in the face with a piece of lumber, and treated for chin and jaw injuries on March 10, 1989; (3) She failed to disclose a degenerative spine disease and that x-rays of her cervical spine, taken before and after the dog bite, were identical; (4) She failed to disclose approximately twenty chiropractic spinal manipulations, to which Dr. Winters testified that he would have advised against such manipulations for a patient with a herniated disc; (5) She failed to disclose her chiropractic treatment for back pain, received prior to the dog bite; (6) She failed to disclose that subsequent to the dog bite, she had consulted another orthopaedic surgeon, who rated her disability at zero.

¶26. And yet, in spite of all this, the jury returned a $50,000 verdict against A & V. Why? Could it have been plaintiff counsel's repeated references to "the corporation with the large income from the

trailer park" which produced sufficient bias or prejudice that the jury's verdict was based on such sentiments, rather than the weight of the evidence? Reminds me of the brazen unfairness of repeated "cheap shots, i.e. Mr. General Motors,. . .a trial of dirty tricks, the unfair opening argument. . .and counsel's unfair closing argument". . . as cited by the dissent in *General Motors v. Jackson*, 636 So. 2d 310, 344, 349 (Miss. 1992), (Hawkins, C.J., dissenting). Such repeated conduct calculated to influence the emotions of a jury has no place in the courtroom.

¶27. On A & V's cross-appeal, this Court should find error by the trial court in its denial of defendant's Motion for Directed Verdict under the standard articulated by this Court in *City of Jackson v. Locklar*, 431 So. 2d 475, 478 (Miss. 1983). The trial court's comments during the hearing on A & V's Motion for JNOV, as previously set out above, clearly demonstrate that the judge felt that the facts and inferences overwhelmingly favored A & V and that Mongeon failed to meet her burden of proof sufficiently to allow the issue to proceed to a jury. In *Astleford v. Milner Enterprises, Inc.*, 233 So. 2d 524 (Miss. 1970), this Court stated that "[w]hen the trial court is convinced that a peremptory instruction should be granted, it, of course, should do so." *Id.* at 525. In the case at bar, the trial court acknowledged that a directed verdict should have been granted and that there was no evidence that A &V had prior notice of Brown's dogs being dangerous. The pronouncements of *Astleford* should apply because the trial court was not in doubt as to the weight of the evidence.

¶28. I respectfully dissent.

**LEE, C.J., PITTMAN AND ROBERTS, JJ., JOIN THIS OPINION.**