SMITH, Justice:
McKinley Grayson was plaintiff and Joseph M. Poy was defendant in a suit for damages for personal injuries sustained as a result of Grayson having been bitten by a dog owned by Poy. The case was tried in the Circuit Court of Coahoma County where a jury returned a verdict for Gray-son. Poy appeals.
A number of matters are assigned as error but it is necessary to notice only one. *492 On the evidence, the jury should have been peremptorily instructed to find for Poy.
The animal in question was a half-breed, six months old puppy. Its mother was a German Shepherd. Its father was unknown. It was kept, with its mother, in a fenced yard back of Poy’s store. At night both the puppy and its mother were put in the store as a deterrent to burglars. This latter fact is said to have placed them in the category of “watch dogs.”
Appellee relies upon the appellation “watch dog,” his own statement that he “figured” that the dog was a “bad dog,” and the fact that it was kept in a fenced yard by day and in the store at night, as being sufficient to support factual findings that the puppy was (1), of a vicious disposition and (2), that Poy knew or reasonably ought to have known of its dangerous character and that it was likely to bite someone.
The biting of Grayson by the puppy occurred in this manner. Grayson was a garbage collector and from time to time (two or three times a week) collected Poy’s garbage from cans located near the fence of the yard in which the puppy was kept. He testified that upon the occasion when he was bitten he was collecting garbage as usual when the puppy stuck its head through the fence and bit him severely on the arm. A careful search of the record discloses that there was no testimony that the puppy on any former occasion had attacked or bitten anyone or that it had ever attempted to do so. In fact, all of the evidence, including that of the plaintiff himself, was to the contrary. The plaintiff testified:
Q. Now, you had seen the dog in there before?
A. Yes, sir.
Q. Did you ever consider the dog to be vicious—
A. —well, yes, sir, I figured he was a bad dog.
Q. But, had he ever made any attempt to come out against — at you ?
A. No, sir, he hadn’t never bothered around with me before.
Q. I see. And, did you in any way tease the dog the day you were there, make any motion toward the dog ?

A. No, sir, never had attempted to bother me.
Q. Never had any trouble with any of those dogs at all, did you ?
A. No, sir.
Q. You weren’t afraid of them, were you?
A. No, sir.
Q. Did you ever see the dog bother anybody else ?
A. No, sir; we never tarried there no longer than we picked up our trash and we’d be gone.
Q. In other words, you all would go there two or three times a week; you didn’t have any possible fear of those dogs, did you ?
A. No, sir.
Q. And, you didn’t have any fear, because you never saw them bothering anybody ?
A. No, sir.
Q. Now, if those dogs, every time that you went by there, if they had barked at you, and snapped at you and all that, you wouldn’t have gone close to that fence, would you ?
A. I wouldn’t of even picked it up.
Q. Why certainly you wouldn’t. So, the fact is that the reason you were willing to go up there with that pitch fork and get the trash is because neither one of the dogs had ever bothered you, had they?
*493 A. No, sir, they hadn’t never—
Q. —and you never had heard of them bothering anybody else, had you?
A. No, sir.
Q. Mr. Grayson, if you had ever heard of these dogs bothering anybody, or being vicious to anybody, you would have been a little afraid to go up to that fence, wouldn’t you ?
A. Yes, sir. I didn’t think it was no danger if I didn’t get inside of it, just as long as I done my job and got away, it always happened like that.
Q. And, the reason you didn’t think it was dangerous is because you had never heard of them bothering anybody?
A. No, sir.
O. And, they had never bothered you?
A. No, sir.
Q. Never bothered anybody else on your truck, did they ?
A. No, sir.
Plaintiff’s co-worker, who was with him on the occasion when plaintiff was bitten, also testified:
Q. Had you ever seen these dogs before you started working for the City?
A. I’ve seen them out there in the back yard.
Q. They ever bothered you in any way?
A. No.
Q. Did you ever see them bother anybody else?
A. No, I hadn’t.
The testimony of the driver of the garbage truck was to the same effect. He testified that he had been working the route for three or four years and that he had never been bothered by the dog in question.
All of the other direct testimony was to the effect that the puppy had never attacked or attempted to attack anyone prior to the occasion when plaintiff was bitten. As already stated, there was no testimony to the contrary.
In 4 Am.Jur.2d Animals, section 86 (1962) it is stated: “The gist of the action has been characterized as the keeping of the animal with knowledge of its vicious disposition.”
While in some states liability for injuries inflicted by a dog is imposed on the owner by statute that is not the case in Mississippi.
Here, as has been noted, it was necessary that the plaintiff introduce evidence that the puppy was of a vicious or dangerous disposition. Having established that proposition, it was then necessary that he go further and show by evidence that the dog had, prior to the occasion when he was bitten, exhibited in some manner dangerous or vicious characteristics of which the owner knew or reasonably should have known. The evidence in this case failed in both particulars. While appellee stated that he “figured” the puppy was a “bad dog” he gave no basis for the opinion and repeatedly stated that the puppy had never attacked or attempted to attack him on any of the many occasions when he had picked up the garbage. In fact, he said: “as many times as I have passed there and picked up his stuff and that dog has never made an attempt to do nothing to me before.” It was incumbent upon appellee to show, in order to establish reasonable foreseeability or scienter that the puppy had exhibited a vicious disposition or a tendency to attack prior to the occasion when he bit plaintiff. There is nothing whatever in the record capable of supporting a finding that this puppy had previously exhibited any such character or disposition as would reasonably have put Poy on notice or en *494 abled Poy reasonably to foresee that it might attack or bite someone.
W. Prosser, Handbook Of The Law Of Torts, section 75 (3rd Ed.1964) states:
“Dangerous” animals requires definition. It means, in general, animals which are known in fact, or which must necessarily be known, by the one who keeps them to be likely to inflict serious damage. A distinction has been made between animals which, by reason of their species, are by nature ferocious, mischievous or intractable, and those of a species normally harmless. In the second class are cattle, sheep, horses, dogs and cats, and other creatures regarded as usually harmless. As to these, it must be shown that the defendant knew, or had reason to know, of a dangerous propensity in the one animal in question. .
In Restatement of Torts, section 509(f) (1938), it is said:
The great majority of dogs are harmless and the possession of characteristics dangerous to mankind or to livestock are properly regarded as abnormal to them. Consequently the possessor of a dog is not liable for its biting a person or worrying or killing livestock unless he has reason to know that it is likely to do so.
In 3 C.J.S. Animals § 148a (1936) the general rule is:
Generally the owner of a domestic animal is under no obligation to guard against injuries which he has no reason to expect on account of some disposition of the individual animal different from the species generally if he has no notice of such disposition. Hence, if the injury has resulted from the exercise of a vicious propensity, which is not natural to the class of animals to which the offending animal belongs, the owner or keeper of the animal is usually not liable if he did not have previous knowledge or scienter of the vicious propensity, or could not have ascertained the same by the exercise of reasonable care. .
In Pennyan v. Alexander, 229 Miss. 704, 715, 91 So.2d 728, 732 (1957), a case in which liability was imposed on the owner of an animal, the Court nevertheless went on to say :
“[H]e [the owner] is under no moral obligation to anticipate that a horse in which no such disposition has been discovered will suddenly make an assault upon and kick and bite some passerby who chances to come within his reach. For this reason the keeper of a domestic animal is not in general responsible for any particular mischief that may be done by such animal which was of a kind not to be expected from him, and which it would not be negligence in the keeper to fail to guard against.” Cooley on Torts, Fourth Edition, Vol. 2, p. 305, Sec. 266.
There is a considerable diversity among the Courts of the several states as to the conditions under which liability may be imposed in cases of this kind. However, we believe the sounder rule requires that there be some proof that the animal has exhibited some dangerous propensity or disposition prior to the attack complained of, and, moreover, it must be shown that the owner knew or reasonably should have known of this propensity or disposition and reasonably should have foreseen that the animal was likely to attack someone.
A careful examination of the record has convinced us that the evidence was not sufficient to support a finding (1) that prior to plaintiff’s having been bitten that the puppy had exhibited a vicious or dangerous disposition or (2) that there was any conduct on its part or any incident involving it which could be reasonably considered as having put Poy on notice or enabled him reasonably to foresee that it was likely to attack or bite anyone.
*495 The judgment appealed from is reversed and judgment is entered here for appellant.
Reversed and judgment entered for appellant.
RODGERS, P. J., and PATTERSON, INZER and ROBERTSON, JJ., concur.