GRIFFIS, P. J.,
for the Court:
¶ 1. Penny Pinchers and William B. Johnson d/b/a Penny Pinchers (“Penny Pinchers”) appeal the judgment of the Clay County Circuit Court denying then-motion for a judgment notwithstanding the verdict (“JNOV”) or, alternatively, a new trial. Penny Pinchers argues that the plaintiff, Lenetra Outlaw, failed to prove that the presence of a four-month-old dachshund in their grocery store created a dangerous condition. We agree; therefore, the judgment of the circuit court is reversed and rendered.
FACTS
¶ 2. Cindy Scott was the manager of Penny Pinchers, a discount grocery store located in West Point, Mississippi. She was also the owner of a four-month-old dachshund puppy named Sophie, which weighed four pounds and one ounce. Scott took Sophie to work with her every day. She set up a piece of peg board to keep Sophie contained in the area behind the checkout counter. Scott testified that this was to protect Sophie from the customers because Sophie was such a tiny dog.
¶ 3. On August 16, 2006, Outlaw entered Penny Pinchers. She said hello to Scott, who was having a conversation with Anita Reeves, an employee, and Ivy Mann, a customer. Outlaw testified that she started walking down an aisle when she heard a dog bark. Because she is terrified of dogs, she started running down the aisle toward the back of the store. She said that she could hear the claws of the dog hit the floor as the dog chased her down the aisle. When she turned to see how close the dog was, she ran into a freezer at the back of the store. She then tried to jump on top of the freezer to get away from the dog.
¶ 4. Outlaw testified that Scott picked up the dog and told Outlaw that the dog would not hurt her. When Outlaw saw how small the dog was, she began to laugh and tell Scott about her extreme fear of dogs. Outlaw then went on with her shopping. She bent down to reach a five-pound bag of catfish in the deep freezer. She took the catfish to the counter and then walked fifteen feet to another aisle where she bent down to the bottom shelf to pick up a four-pound bag of sugar. Outlaw testified that she began to feel a severe pain in her hip as she continued to shop.
¶ 5. Scott’s testimony of the events surrounding Outlaw’s injuries was markedly different. She testified that she unknowingly left the pegboard enclosure open. While she was talking to Reeves and Ivy, she heard Sophie bark from the front side of the counter. Scott realized Sophie was out of the enclosure, so Scott stepped in front of the counter and picked up the dog.
¶ 6. Scott testified that it only took a moment for her to pick up Sophie after she heard the bark. By then, Scott said that Outlaw was already thirty feet away at the back of the store. That is when Outlaw turned and saw the dog and began to laugh and explain her fear of dogs. Scott told Outlaw that Sophie would not hurt her, and Outlaw continued her shopping.
¶ 7. When Outlaw returned to the counter with the sugar, she began to sob. Scott testified that she asked Outlaw whether she needed an ambulance. Scott said that she could not understand Outlaw because of the sobbing. Scott called Johnson, the owner of Penny Pinchers, who *248 came to the store. He called an ambulance, and Outlaw was transported to the hospital.
¶ 8. Outlaw had extensive health problems before this incident. She had Perthes Disease as a child, a condition that caused severe hip problems. She also suffers from rheumatoid arthritis. She had a total replacement of the left hip in 1995. Because the prosthetic device used in the hip replacement only lasts between ten to fifteen years, Outlaw underwent a revision surgery in 2005. Again, that prosthetic device was estimated to last from ten to fifteen years; however, Outlaw had to have a second revision surgery in 2006 following her collision with the freezer at Penny Pinchers.
¶ 9. Outlaw filed suit against Penny Pinchers, Johnson, and Scott. Scott, in her individual capacity, was dismissed as a defendant prior to trial. Outlaw alleged that Penny Pinchers negligently failed to (1) maintain the premises in a safe condition, (2) provide proper restraint of the dog, and (3) warn customers of the dog’s presence. At the close of Outlaw’s case-in-chief, Penny Pinchers moved for a directed verdict claiming that Outlaw had presented no evidence of any dangerous condition. Penny Pinchers further asserted that Outlaw had failed to show that Sophie had previously exhibited any dangerous propensities or that Penny Pinchers knew or should have known of such a danger. The motion for a directed verdict was denied.
¶ 10. The jury found Penny Pinchers 70% liable and Outlaw 30% liable for Outlaw’s injuries. Outlaw was awarded $130,000. The circuit court subsequently denied Penny Pinchers’ motion for a JNOV or, alternatively, a motion for a new trial. Penny Pinchers now appeals.
STANDARD OF REVIEW
¶ 11. The standard of review for a JNOV “tests the legal sufficiency of the evidence supporting the verdict, not the weight of the evidence.” Corley v. Evans, 835 So.2d 30, 36 (¶ 16) (Miss.2003). When confronted with a motion for a JNOV, the trial judge must:
consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that reasonably may be drawn therefrom. The trial court should consider the evidence offered by the non-moving party and any uncontra-dicted evidence offered by the moving party. If the evidence thus considered is sufficient to support a verdict in favor of the non-moving party, the motion for [a] JNOV must be denied.
Id. at (¶ 17) (citation omitted). “[I]f there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.” Id. at 37 (¶ 19).
ANALYSIS
¶ 12. It was undisputed that, as a customer of Penny Pinchers, Outlaw was classified as a business invitee. A business owner owes a business invitee a duty of ordinary care to keep the business premises in a reasonably safe condition. Waller v. Dixieland Food Stores, Inc., 492 So.2d 283, 285 (Miss.1986). The owner has a duty to warn invitees of dangerous conditions that are not apparent to the invitee, of which the owner or occupier knows or through the exercise of reasonable care should know. Id. However, the owner is not an insurer against all injuries that may occur on the premises. Jerry Lee’s Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss.1988).
*249 ¶ 13. Thus, Penny Pinchers owed Outlaw a duty to keep the store in a reasonably safe condition. Penny Pinchers had a duty to warn Outlaw of any dangerous conditions of which it knew or should have known. However, implicit in that duty is that a dangerous condition must exist. See Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473, 476 (Miss.1967) (citing 65 C.J.S. Negligence § 63(130) (1966)) (The owner of a business “is not liable for injuries caused by conditions which are not dangerous.... ”).
¶ 14. Further, the owner “is not required to keep the premises absolutely safe, or in such a condition that no accident could possibly happen to a customer.” Id. “The owner is merely required to anticipate a result that is more apt to happen than not to happen, that is to say he must anticipate only such a result as is reasonably foreseeable as a probable consequence of his act.” Id.
¶ 15. Here, the dispute is whether the presence of the dog in the store created a dangerous condition. Outlaw, who claims that Sophie barked at and chased her, argues that Sophie was a dangerous condition. Penny Pinchers disagrees and says it had no reason to believe that Sophie’s presence in the store created any danger. Because Sophie had never exhibited any dangerous propensities, Penny Pinchers claims that it could not and should not have known of any dangerous condition.
¶ 16. While this is not a traditional “dog-bite” case, we find it instructive that the supreme court has held that dogs are not dangerous per se. To impose liability on a dog owner for personal injuries caused by the dog, “there [must] be some proof that the animal has exhibited some dangerous propensity or disposition prior to the attack complained of, and, moreover, it must be shown that the owner knew or reasonably should have known of this propensity or disposition and reasonably should have foreseen that the animal was likely to attack someone.” Poy v. Grayson, 273 So.2d 491, 494 (Miss.1973).
¶ 17. Considering the specific facts of this case, even in a light most favorable to Outlaw, we find no proof that Sophie created a dangerous condition at Penny Pinch-ers. There was no proof that Sophie had previously exhibited any of the behaviors that Outlaw alleged. Scott took Sophie with her to Penny Pinchers on a daily basis. Sophie had never barked or chased any of the other customers. In fact, there was no proof that any other customer had a problem with Sophie.
¶ 18. We must also consider that Sophie was a four-pound puppy at the time of the incident. Outlaw admitted that, when she heard the bark, she never turned to look at the dog. Instead, she started running toward the back of the store. She further admitted that she began to laugh when she finally saw that such a small dog had caused her to run into the freezer. While we agree with Outlaw that it is possible that the presence of a dog inside a grocery store could create a dangerous condition, the facts that she presented at trial do not prove that a dangerous condition existed here.
¶ 19. We acknowledge Outlaw’s extreme fear of dogs. However, we cannot say that it was reasonable for Penny Pinchers to anticipate that anyone, even someone with a great fear of dogs, would have such a reaction to Sophie’s presence in the store. “The invitee is required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstances.” Gen. Tire & Rubber Co. v. Darnell, 221 So.2d 104, 107 (Miss.1969) (citing Stanley, 203 So.2d at 476). Penny Pinchers was *250 not required to protect Outlaw from any possible injury, but only those injuries that were a foreseeable result of Penny Pinch-ers’ action of allowing a four-pound puppy to be present in the store.
¶ 20. We find that Outlaw failed to prove that Sophie created a dangerous condition. As such, Outlaw failed to prove that Penny Pinchers had breached its duty to provide her reasonably safe conditions within the store. The judgment of the circuit court is reversed, and judgment is rendered in favor of Penny Pinchers.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.