*999 COLEMAN, Justice,
dissenting:
¶57. I agree with Presiding Justice Dickinson that the instant case is a premises liability case and that the law will not allow us to consider the applicability of the dog-bite rule, or dangerous propensity rule as it is otherwise called, without considering our law on premises liability. However, rather than changing our longstanding premises liability law and classifications of plaintiffs attendant thereto, I believe Mississippi law as it stands provides that the usual standard for negligence against a licensee, as all agree the plaintiff was in the instant case, does not apply to the plaintiff here. I would apply the exception to the invitee/licensee dichotomy created by the Court in Hoffman v. Planters Gin Co., Inc., 358 So.2d 1008 (Miss.1978), and apply an ordinary and reasonable standard of care to the defendant.
¶ 58. However, even under such a standard of care, for three reasons the plaintiff has failed to adduce sufficient evidence, even taking all evidence in the record in a light favorable to her, to create an issue of material fact. What I will herein refer to as the dangerous propensity rule governs the defendant’s claim under the reasonable care standard, and the plaintiff has failed to create an issue for the jury under it. First, the plaintiff failed to produce any evidence that'the goose that attacked her had ever displayed a propensity for dangerous behavior prior to her injury. Second, the plaintiff failed to produce any evidence that the aggressive behavior of the goose was anything other than natural behavior for geese as a class of animals. Finally, I would hold that because the plaintiffs knowledge of the relevant behavior of the defendant’s geese equaled that of the defendant, the defendant cannot be liable. Accordingly, I am of the opinion that, as a matter of law. the defendant cannot be1 held liable for the plaintiffs injuries.
I. The case sub judice must be analyzed as a premises liability case, but a reasonable standard of care nevertheless applies to the defendant.
¶ 59. When a plaintiff receives injuries as a result of the conditions present or activities conducted on premises belonging to the defendant, premises liability law applies. Double Quick, Inc. v. Moore, 73 So.3d 1162, 1166 (¶ 10) (holding that premises liability law controlled claim arising from a parking lot shooting when decedent did not die as a result of acts by defendant’s employees and when defendant’s employees were unaware of his presence on the property; rather, the death occurred because of activity being conducted on the property); Doe v. Jameson Inn, Inc., 56 So.3d 549, 553 (¶ 11) (Miss.2011). The Double Quick Court wrote, “Because [the decedent’s] injury was the result of an activity that occurred on Double Quick’s property, we find that Moore’s claim is one of premises liability. Accordingly, the trial court erred in holding that the instant case was not a premises-liability case.” Double Quick, 73 So.3d at 1166 (¶ 10). In other words, a negligence claim sounds in premises liability or it does not. It cannot sound in both. Keeping geese is an activity, and in the instant case the defendant conducted the activity on her premises where the injury occurred. The instant case is one that sounds in premises liability and is subject to premises liability law.
¶ 60. All parties agree that the plaintiff entered upon the defendant’s property as a social guest and licensee, and I have nothing to add to the plurality’s explication of the standard of care normally owed a licensee. However, the normal standard of care does not apply to the plaintiff in the *1000 instant case. In Hoffman v. Planters Gin Co., Inc., 358 So.2d 1008 (Miss.1978), the fourteen-year-old plaintiff was injured when he accompanied his father to a cotton gin for the purpose of transporting cottonseed and fell into a moving auger. Id. at 1010. He lost his leg below the knee. Id. There were no warning signs on the building or doors, and the entrance to the tunnel containing the auger was never locked; testimony established that the generally accepted safety practices in the Mississippi Delta included posting warning signs, preventing unauthorized persons around machinery, and covering augers accessible to anyone. Id. The plaintiff testified that half of the auger covers were off and no gin employees or supervisors ever warned him to stay away from the augers despite knowing he often was around them. Id. He was, however, warned that the augers were dangerous. Id. After establishing that, as either the child of an adult who himself was on the premises to conduct business or, in the alternative, as an invitee who exceeded the scope of his invitation, the plaintiff was a licensee, the Hoffman Court eschewed the traditional standard of care owed to a licensee in favor of the usual negligence standard of reasonable care. Id. at 1012. The Court wrote,
The legal distinctions between a licensee and invitee have little significance once the presence of a person upon the possessor’s premises is known and there are affirmative actions involving him. Status relates largely to negligence for the condition of premises, that is, passive negligence and not to active or affirmative negligence emanating from action or inaction by the possessor with knowledge of an individual’s presence.
Id. In closing and after discussing several other secondary sources, the Hoffman Court quoted with approval Prosser, Law of Torts 379 (4th ed.1971), which read, “It is now generally held that as to any active operations which the occupier carries on, there is an obligation to exercise reasonable care for the protection of a licensee .... ”
¶ 61. There have been limited opportunities for the Court to address what has come to be known as the Hoffman exception in the more than three-and-a-half decades of its existence. However, I would be remiss if I failed to address one aspect of its development that runs counter to my position. In the opinion, the Hoffman Court wrote:
We think the premises owner is liable for injury proximately caused by his affirmative or active, negligence in the operation or control of a business which subjects either licensee or invitee to unusual danger, or increases the hazard to him, when his presence is known and that the standard of ordinary and reasonable care has application.
Hoffman, 358 So.2d at 1013 (emphasis added). Nowhere else in the opinion does the Court use the word “business” in the same context, and none of the secondary sources limits the principle that I now refer to as the Hoffman exception to businesses. Id. at 1013.
¶ 62. In the context of the opinion as a whole, the Hoffman Court’s use of the clause, “affirmative or active negligence in the operation or control of a business,” did nothing more than describe the conduct at issue in the case. I do not read it to express an intent on the part of the Court to limit the exception to business invitees, nor am I able to appreciate any difference between business premises and nonbusiness premises that would explain such a limitation. However, I acknowledge that subsequent opinions read the language as a limit of the exception to business premises, see, e.g., Little v. Bell, 719 So.2d 757, *1001 761-762 (¶ 22) (Miss.1998) (“[T]he Hoffman exception only applies to those cases involving the operation or control of a business”) (citing Hughes v. Star Homes, Inc., 379 So.2d 301, 304 (Miss.1980)), and that to adopt my position, the Court would have to clarify the rule and modify, if not overrule, cases such as Little and Hughes. It is remarkable that, although the Little Court relied on Hughes to support its reading of the business-premises limitation into Hoffman, Hughes itself does not do so. In fact, the word “business” appears nowhere in the Hughes opinion. Rather, the Hughes Court expressed the narrowness of the Hoffman exception as follows:
In one case, Hoffman v. Planters Gin Co., Inc., 358 So.2d 1008 (Miss.1978), we applied the standard of ordinary and reasonable care rather than the standard of intentional or wanton negligence due a licensee. In that case we held that the owner of premises is liable for injury proximately caused by the owner’s affirmative or active negligence in the operation or control of activities which subjects a licensee to unusual danger or increases the hazard to the licensee when the presence of the licensee is known. In Hoffman, we changed the standard of care owing to a licensee but carefully limited the new standard of care to those cases involving injury resulting from active conduct as distinguished from conditions of the premises, or passive negligence.
Hughes, 379 So.2d at 304.
¶ 63. Because the remainder of the Hoffman opinion cannot be read to support the business-premises limitation; the Court expressly stated its “view” to be that statement of the rule written by Pros-ser, quoted above, which makes no mention of such a limitation; and the Hughes opinion does not support the Little Court’s reliance upon it, I am of the opinion that it would be correct for the Court to clarify that the Hoffman exception does not apply only to business premises.
¶ 64. Turning to the case sub judice, the evidence clearly shows that the defendant knew the plaintiff was present on the premises. Moreover, an allegation of negligence relying on the dangerous propensity rule is an allegation of active, rather than passive negligence. As I develop further below, a claim under the dangerous propensity rule is at its heart a claim based on the superior knowledge of the animal owner and failure of the animal owner to warn or protect others from a dangerous propensity in the animal that, because the class of animal to which it belongs does not share the propensity, the other person cannot be expected to know of it. If the Hoffman Court considered the failure to lock doors, place warning signs, and cover the augers to be active negligence, so too is a dangerous-propensity claim. Moreover, a dangerous-propensity claim, as it is based on the superior knowledge of the defendant, is similar in nature to a failure-to-warn claim. Failure to warn constitutes active negligence. Long Term Care, Inc. v. Jesco, Inc., 560 So.2d 717, 719 (Miss.1990) (failure to warn classified as active negligence in context of contribution between tortfeasors). Finally, by keeping the geese and encouraging her guest to make her ill-fated foray into their midst, the defendant increased the hazard. Accordingly, the Hoffman exception should apply here.
II. The plaintiff has failed to create a triable issue of fact under the dangerous propensity rule.
¶ 65. Having set forth why I believe an ordinary care standard should apply, I now turn to what the standard is in a case involving allegations that an owner is liable for injuries caused by an animal. In Poy v. *1002 Grayson, 273 So.2d 491 (Miss.1973), the Court examined a few secondary sources addressing animal-owner liability and settled upon the following rule:
There is a considerable diversity among the Courts of the several states as to the conditions under which liability may be imposed in cases of this kind. However, we believe the sounder rule requires that there be some proof that the animal has exhibited some dangerous propensity or disposition prior to the attack complained of, and, moreover, it must be shown that the owner knew or reasonably should have known of this propensity or disposition and reasonably should have foreseen that the animal was likely to attack someone.
Id. at 494. Regarding the dog attack in Poy, which the Court held resulted in no liability attributable to the owner, the Court wrote, “There is nothing whatever in the record capable of supporting a finding that this puppy had previously exhibited any such character or disposition as would reasonably have put Poy on notice or enabled Poy reasonably to foresee that it might attack or bite someone.” Id. at 493-494.
¶ 66. In Mongeon v. A & V Enter., Inc., 733 So.2d 170 (Miss.1997), the Mississippi Supreme Court reversed a trial court’s grant- of judgment notwithstanding the verdict in a case where a jury awarded damages to a plaintiff who had been attacked by dogs belonging to the defendant. The Mongeon Court held that evidence of one occasion when the dogs earlier had growled at another person and a second occasion when the dogs had approached her small dog together sufficed to show a dangerous propensity or disposition. Id. at 172 (¶ 12).
¶ 67. By contrast, in the case sub judi-ce, neither the plurality nor the plaintiff identifies any evidence of record that showed any sort of dangerous propensity or disposition on the part of the young goose prior to the incident which resulted in the attack on the plaintiff. At best, the plaintiff points to aggressive behavior of the goose during the attack itself but identifies nothing that occurred beforehand that could fairly be said to have put the defendant on notice that the goose was dangerous or had any tendency to injure persons. Both the Poy and Mongeon Courts looked for evidence of dangerous behavior that preceded the underlying attacks — not that occurred as part of the same series of events that included the attack as occurred in the instant case. Poy, 273 So.2d at 491, 493 (“All of the other direct testimony was to the effect that the puppy had never attacked or attempted to attack anyone prior to the occasion when plaintiff was bitten.”) (emphasis added); Mongeon, 733 So.2d at 172 (¶¶ 9-10, 12). With respect, I disagree with the plurality’s choice to rely on evidence that, at some point, another goose within the gaggle of geese acted aggressively toward some law enforcement officers. The dangerous propensity doctrine, as discussed in Poy and the secondary sources discussed therein, applies only to individual animals.
¶ 68. Second, the Poy Court, quoting 3 C.J.S. Animals 148a (1936), wrote that for liability to attach, the vicious propensity in question must be “not natural to the class of animals to which the offending animal belongs.” Poy, 273 So.2d at 494. The plaintiff failed to produce any evidence showing that the dangerous propensity exhibited by the subject goose in the instant case was not natural to geese as a class of animal. The lack of evidence on the point provides a fatal blow to the, plaintiffs appeal. On the instant point, the plurality responds with the suggestion that geese as a group are dangerous animals, and be *1003 cause they are dangerous as a class the dangerous propensity rule “falls away.” (Plur. Op. at ¶ 42). However, as noted above, the dangerous propensity rule upon which the plaintiff relies applies by its terms only when the dangerous propensity in question differentiates the animal from other animals of the same class.
¶ 69. Finally, the plaintiff has failed to demonstrate that the defendant had superior knowledge of any dangerous propensity of the goose. In the case sub judice, all evidence of any danger posed by the goose, or gaggle of geese, was known equally to the plaintiff and defendant. The defendant entered the domain of the geese once alone and retreated. Armed with a bamboo stick, the plaintiff soldiered once more into the geese. Because the plaintiff’s knowledge equaled that of the defendant, I would hold she cannot recover. See Durham v. Mason, 256 Ga.App. 467, 468, 568 S.E.2d 580, 582 (2002) (“The true test of liability is the owner’s superior knowledge of his dog’s temperament.”). While I find no case in which Mississippi explicitly has adopted the superior knowledge requirement, I find cases discussing such a requirement to be persuasive. It follows naturally from two principles. First, liability of the owner arises from the knowledge of the dangerous propensity.
“ ‘The gist of the action has been characterized as the keeping of the animal with knowledge of its vicious disposition.’ ” Poy, 273 So.2d at 493 (quoting 4 Am. Jur.2d Animals § 86 (1962)) (emphasis added). Second, the dangerous propensity distinguishes the animal from its class of like animals. Poy, 273 So.2d at 494. It follows that a dangerous propensity known to both parties either because it is natural to the class of animal or because both have witnessed the same evidence of the subject' propensity cannot support a finding of liability. Accordingly, equal knowledge possessed by the plaintiff obviates the above-stated purpose for imposing liability.
¶ 70. I would hold that the defendant in the case sub judice was subject to the Hoffman exception and a reasonable care standard, that the standard of reasonable care applicable to the defendant is established by the dangerous propensity rule, and that, even taking the evidence of record in a light most favorable to the plaintiff, she has failed to make a prima facie case. Accordingly, summary judgment was appropriate, and I respectfully dissent.
PIERCE, J, JOINS THIS OPINION. DICKINSON, P.J., JOINS THIS OPINION IN PART. RANDOLPH, P.J., JOINS THIS OPINION IN PART II ONLY.