# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01313-COA

**JEANETTE B. RINGO**                                                                     **APPELLANT**

**v.**

**LELA WILSON AND TELA WILSON COLLINS**                          **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2014 |
| TRIAL JUDGE: | HON. C.E. MORGAN III |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT G. JOHNSTON |
| ATTORNEYS FOR APPELLEE: | BLAYNE THOMAS INGRAM DAVID LEE GLADDEN JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED IN FAVOR OF APPELLEES |
| DISPOSITION: | AFFIRMED: 02/16/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P. J., FOR THE COURT:**

¶1.     Jeanette Ringo suffered injuries when she retreated from a Peekapoo dog owned by Lela Wilson and Tela Wilson Collins and fell in their driveway. Ringo filed suit for personal injuries in the Montgomery County Circuit Court. Collins and Wilson filed a motion for summary judgment, which the circuit court granted. Ringo now appeals. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On August 6, 2010, Ringo went to the home shared by Wilson and her daughter,

Collins. Ringo and Collins were friends and former coworkers. Ringo asked Collins to come to the house to deliver some empty boxes from Ringo's workplace. When Ringo arrived, neither Collins nor Wilson was at the house. Their dog, however, was tied up outside of the house and began barking at Ringo. When Ringo carried the boxes up the driveway, the dog startled her. She backed away from the dog then fell in the driveway, sustaining injuries, including a broken wrist.

¶3. Ringo filed a complaint against Collins and Wilson. She asserted claims for negligence regarding the premises and the dog. Collins and Wilson filed a motion for summary judgment. The trial court held a hearing on the motion, and granted it.

## STANDARD OF REVIEW

¶4. "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence 'in the light most favorable to the party against whom the motion has been made.'" *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (quoting *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 71 (¶5) (Miss. 2012)). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 464-65 (¶3) (Miss. Ct. App. 2003) (quoting *Piggly Wiggly of Greenwood Inc. v. Fipps*, 809 So. 2d 722, 725 (¶9) (Miss. Ct. App. 2001)).

## ANALYSIS

I.   *Whether the trial court properly granted summary judgment on the issue of premises liability.*

¶5.    Ringo contends that Wilson and Collins committed negligence in failing to properly maintain their driveway.  Under the premises-liability doctrine, Ringo argues Wilson and Collins owed a duty to maintain a reasonably safe premises and their failure to repair the driveway constituted negligence on their part.

¶6.    The parties agree that Ringo, as an invitee, was entitled to a reasonably safe premises. "The established law in this state is that the owner, occupant[,] or person in charge of [the] premises owes to an invitee or business visitor a duty of exercising reasonable or ordinary care to keep the premises in [a] reasonably safe and suitable condition[.]" *Mayfield v. The Hairbender*, 903 So. 2d 733, 735-36 (¶11) (Miss. 2005) (footnote omitted) (citation omitted).

¶7.    In previous premises-liability cases, there was "no liability for injuries, where the condition is not dangerous, or where the condition is, or should be, known or obvious to the invitee." *Tharp v. Bunge Corp.*, 641 So. 2d 20, 23 (Miss. 1994) (citation omitted).  *Tharp* abolished this defense and held:

> The "open and obvious" standard is simply a comparative negligence defense used to compare the negligence of the plaintiff to the negligence of the defendant.  If the defendant was not negligent, it makes no difference if the dangerous condition was open and obvious to the plaintiff since the plaintiff must prove some negligence on part of the defendant before recovery may be had.

*Id.* at 24.  Therefore, Ringo had to present evidence of Collins and Wilson's negligence in order to survive summary judgment.

¶8.    As part of the motion for summary judgment, Collins and Wilson submitted an affidavit of Michael J. Frenzel, a safety consultant, about the condition of the driveway. Frenzel testified that the driveway contained an elevation of approximately one to one and

3

one-quarter inch and included repairs that "ramped" the two elevations together. Frenzel further stated that no standard regulated driveway maintenance, but concluded that the crack did not present an unreasonably dangerous condition.

¶9.     Ringo failed to refute Frenzel's report. Instead, Ringo merely asserted that the elevation change in the driveway was unsafe.

¶10.    This Court, however, has previously found an elevation change in a sidewalk did not create an unreasonably dangerous condition. *See Bond v. City of Long Beach*, 908 So. 2d 879, 882 (¶10) (Miss. Ct. App. 2005); *Rowe v. City of Winona*, 248 Miss. 411, 415, 159 So. 2d 282, 283 (1964). This Court has also found cracks in a parking lot did not create an unreasonably dangerous condition. *Knight v. Picayune Tire Servs. Inc.*, 78 So. 3d 356, 359 (¶8) (Miss. Ct. App. 2011). The *Knight* court stated that "Mississippi has long recognized that normally encountered dangers such as curves, sidewalks, and steps are not hazardous conditions. Often such pathways contain crack[s] and changes in elevation; and, as such, they do not become hazardous conditions simply because they contain minor imperfections or defects." *Id.* (citation omitted).

¶11.    *Knight* is further instructive as to the plaintiff's burden of proof. In *Knight*, the plaintiff could not identify the point at which she fell, which prevented her from establishing a defect in the parking lot caused her fall. *Id.* Here, Ringo failed to state with confidence that she fell due to the crack in the driveway. Ringo merely concluded that she lost her balance but could not identify what caused her imbalance.

¶12.    Therefore, we find that Ringo could not maintain her claim without proving Collins and Wilson acted in a negligent manner. Thus, the trial court did not err in granting summary

4

judgment to them. This issue is without merit.

II. *Whether the trial court properly granted summary judgment on the issue of Wilson and Collins's placement of the dog and the dog's dangerous propensities.*

¶13. Ringo also argues that the trial court erroneously determined that the dog lacked any dangerous propensity. The trial court determined that Ringo failed to prove the dog possessed any tendencies that supported her claim. In opposition, Ringo asserts the dog exhibited prior behavior consistent with a dangerous propensity, which meant Wilson and Collins acted negligently in allowing the dog to remain outside unattended.

¶14. The supreme court has held that to hold a dog owner liable:

> [T]here must be some proof that the animal has exhibited some dangerous propensity or disposition prior to the attack complained of, and, moreover, it must be shown that the owner knew or reasonably should have known of this propensity or disposition and reasonably should have foreseen that the animal was likely to attack someone.

*Poy v. Grayson*, 273 So. 2d 491, 494 (Miss. 1973). Ringo asserted that the dog regularly barked at her, acted in an aggressive manner, and had to remain caged when others came to the house. The evidence also indicates that Wilson and Collins maintained the dog as a guard dog. Questions remain, however, whether this behavior rose to the level of a dangerous propensity or Wilson or Collins should have reasonably foreseen that the dog could attack another person.

¶15. In *Mongeon v. A & V Enterprises Inc.*, 733 So. 2d 170, 172 (¶12) (Miss. 1997), the supreme court held that a reasonable jury could find that an incident where dogs growled at one trailer-park resident "constituted an exhibition of a dangerous or vicious propensity." In *Poy*, however, the supreme court relieved a dog owner of liability when the evidence

5

showed that the dog who bit a garbage man exhibited no tendencies of barking or growling. *Poy*, 273 So. 2d at 494. In this case, the evidence illustrated the dog previously barked around Ringo, but did not behave in a dangerous manner.

¶16. Ringo stated the dog acted aggressively toward her on previous occasions, but she could not point to any indication that the dog would or did attack. Further, during the incident, the dog remained tied up and could only bark at Ringo. Barking from a dog is not considered a propensity separate from its natural inclinations. *See Poy*, 273 So. 2d at 494 (a dangerous propensity is one "which is not natural to the class of animals to which the offending animal [belongs]"). Therefore, the trial court correctly found Ringo failed to present sufficient evidence that the dog possessed dangerous tendencies in order to overcome summary judgment.

¶17. Ringo also attempts to characterize her claims as a unique combination of premises liability and dangerous propensity, as she argues the dog also made the premises unreasonably dangerous. In *Penny Pinchers v. Outlaw*, 61 So. 3d 245, 248 (¶10) (Miss. Ct. App. 2011), a jury found a store owner was seventy percent liable for a customer's injuries when she ran into a freezer after being startled by the store owner's small dog. This Court, however, reversed the judgment and determined that the dog's presence in the store did not create an unreasonably dangerous premises and the store owner could not foresee the plaintiff's reaction to the dog. *Id.* at 249-50 (¶19). Like in *Penny Pinchers*, Ringo failed to show how the dog's presence on the property created an unreasonably dangerous premises.

¶18. We find no merit to this issue.

¶19. **THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT IS**

6

**AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J. GREENLEE, J., NOT PARTICIPATING.**

**JAMES, J., DISSENTING:**

¶20. I respectfully dissent from the majority's opinion. Because I would find that the trial court erred by granting summary judgment in favor of Wilson and Collins, I would reverse and remand.

¶21. This case arises from Ringo falling on the Defendants' cracked, uneven driveway while she was retreating from their charging dog. The Defendants' driveway had cracked due to the settling of the concrete, and was uneven. Along the crack, which ran across the entire driveway, one side was about an inch and a half higher than the other side. Ringo walked toward the Defendants' house with the box that they had requested in a manner in which she could see where she was stepping. She observed and traversed the cracked portion of the driveway. As she approached the house, she noticed the Defendants' dog outside barking at her. The majority opinion states that the dog was tied up, but the trial court stated in its order denying Ringo's motion for reconsideration that the issue of whether the dog was on a leash was a controverted fact, but found that it was not a controverted material fact. Ringo was aware that the Defendants had a dog, but on every other occasion she saw the dog at the Defendants' home, it was in its cage or restrained in some manner. She had never seen the dog outside unattended. The dog, while viciously barking, began to charge her. Ringo was startled and frightened based on her previous interactions with the dog. As the dog was

7

coming toward her at a faster pace, she stepped backwards away from it because she did not want to turn her back to it. As she was stepping backwards, she tripped on the uneven crack in the driveway, lost her balance, and fell, causing several injuries, including a fractured wrist.

## DISCUSSION

### I. Ringo's Theories of Liability

¶22. Ringo's cause of action was brought under the separate theories of premises liability and the dangerous-propensity rule. Specifically, Ringo filed a complaint against the Defendants for maintaining an unreasonably dangerous premises, namely the cracked driveway, and for negligently "positioning and placing and letting the dog be in a position where [it] could charge [Ringo], barking at her and startling her." Ringo argues that these two theories combine to form one unique form of liability. The supreme court in *Olier v. Bailey*, 164 So. 3d 982, 989 (¶20) (Miss. 2015), addressed the relationship between the two theories.

> Animals exist independently of the property; they are capable of independent movement and action and present different potential for harm in different places to different persons at different times. This is one of the many reasons that animals should not be considered conditions of the property. Accordingly, causes of action for injuries related to animal attacks should be maintained independently of premises-liability actions, which in some cases may be pled as separate counts or claims in the same civil pleading.

*Id.*

¶23. "The dangerous-propensity theory of liability exists independently of premises liability, and [the] duty of care as an animal owner is different than [the] duty of care as a landowner." *Id.* at 990 (¶24). There does appear to be some overlap in the theories of

8

liability under the particular facts of this case because, as Ringo was retreating from the dog, she fell on the uneven, cracked concrete that she alleges was an unreasonably dangerous condition on the Defendants's premises. However, in light of the court in *Olier* holding that causes of action for injuries related to animal attacks should be maintained independently of premises-liability actions, I will address her cause of action as pleading independent, alternative theories of liability.

### II. The trial court erred by entering a judgment as a matter of law under the dangerous-propensity rule.

¶24. Under the dangerous-propensity rule, an animal owner may be exposed to liability for an attack by his or her animal when there is proof that: (1) the animal has exhibited some dangerous propensity or disposition that the owner was aware of prior to the attack complained of; and, (2) the owner reasonably should have foreseen that the animal was likely to attack someone. *Id.* at (¶22); *Mongeon v. A & V Enters. Inc.*, 733 So. 2d 170, 171 (¶5) (Miss. 1997); *Poy v. Grayson*, 273 So. 2d 491, 494 (Miss. 1973). "The gist of the action has been characterized as the keeping of the animal with knowledge of its vicious disposition." *Poy*, 273 So. 2d at 494 (quoting 4 Am. Jur. 2d *Animals* § 86 (1962)).

¶25. Therefore, Ringo must show that the Defendants had actual or constructive knowledge of the dangerous propensities of their dog. The trial court found that there was "no evidence that the dog had ever attacked anyone or had any propensity for violence." The trial court stated in its order: "At best Ringo has shown the dog had barked at her on previous occasions[,] . . . [and] there was a total lack of proof by Ringo to satisfy the standards set forth in *Poy*[.]" I disagree. The record contains more than sufficient proof to satisfy the

9

standards set forth in *Poy*.

¶26.    The Mississippi Supreme Court has defined what behavior constitutes an exhibition of some dangerous propensity or disposition. *See Mongeon*, 733 So. 2d at 172 (¶11). For instance, "any tendency of a dog to injure persons, whether the dog acts from a purpose to do bodily harm, from ill-temper, or only playfulness, is a dangerous propensity for which a keeper who has reason to know of such habit will be liable." *Id.* (quoting *Boosman v. Moudy*, 488 S.W.2d 917 (Mo. Ct. App. 1972)). Moreover, the court stated:

> [T]he terms vicious propensities and dangerous propensities have been defined as any propensity on the part of the dog, which is likely to cause injury under the circumstances in which the person controlling the dog places it[,] and a vicious propensity does not mean only the type of malignancy exhibited by a biting dog, that is, a propensity to attack human beings.

*Id.* (quoting *Farrior v. Payton*, 562 P.2d 779 (Haw. 1977)) (internal quotations omitted).

¶27.    In *Mongeon*, the court cited with approval a sister state court's application of this standard:

> Under this standard, the Hawaii court found that the defendant's German shepherd dog, known to have run and barked on numerous occasions at all strangers coming near their property, exhibited vicious propensities, although there was no evidence that their dog had ever bitten anyone. *Farrior v. Payton*, 562 P.2d at 786. The evidence of barking and chasing was deemed sufficient to present to a jury the issue of whether the owners of the dog were negligent and liable for the plaintiff's injuries which resulted from her attempt to escape from the defendant's dog. *Id*. at 787.

*Id.* at (¶12).

¶28.    In *Poy*, a six-month-old puppy bit a garbage collector through a fence. *Poy*, 273 So. 2d at 492. In reversing a jury verdict, the court held that there was no evidence that the puppy had exhibited a vicious or dangerous disposition. *Id*. at 494-95. The court determined

10

that there was no evidence to put the defendant "on notice or enable[] him reasonably to foresee that it was likely to attack or bite anyone." *Id.* at 494. By contrast, in *Mongeon*, a landlord was notified that his two dogs had growled at another person on one occasion. *Mongeon*, 733 So. 2d at 172 (¶9). The court held that a reasonable jury could have found that a single incident where the defendant's dogs growled at the plaintiff constituted an exhibition of a dangerous propensity by the defendant's dogs. *Id*. at (¶12).

¶29. Here, the proof offered by Ringo far exceeded the minimal proof offered in *Mongeon*, which the court found was sufficient. There is more than sufficient proof in the record to present to the jury on the issue of whether the Defendants were liable under the dangerous-propensity rule. Unlike the total lack of proof offered in *Poy*, Ringo provided proof that the Defendants had not only constructive knowledge, but actual knowledge of the dog's dangerous propensities or disposition based on the dog's previous conduct. Ringo described the dog's behavior as "aggressive" toward her during previous encounters in the presence of the Defendants during her visits to their home.

¶30. Ringo testified that Collins had told her several times that the dog was a "guard dog" during her visits. During one visit, Ringo commented to Collins that the dog was "so vicious" and "always barking." Collins responded that was because it was not a pet and the Defendants did not have it for that reason. Collins told Ringo that it was used for protection purposes such as alerting her to people entering their home. Collins also told her to not get close to it because he did not care for Ringo. Collins also told Ringo that she did not allow children to pet it or want children to play with it. Ringo gave additional testimony about the dog's dangerous propensities:

11

Q:      Had the dog ever startled you or frightened you before?

A:      In the house, whenever I would pass by him, he would become really agitated and, you know, in his cage try to get at me.

        . . . .

Q:      How many times had you been in their home when that dog acted viciously towards you?

A:      On every occasion that I was there he acted that way.  But, it was at least ten times, I would say a minimum of ten times.

        . . . .

Q:      What did Ms. Collins tell you about the dog?

A:      That he was not to be petted.  That was not his purpose.  He was not there as a pet.

Q:      . . . What did Ms. Collins tell you was the purpose of the dog?

A:      To protect and alert she and her mother from intruders or people coming on the property and just to give them a sense of security.

        . . . .

Q:      All right.  Now, prior to August 6, 2010, how many times had you been to Ms. Collins when the dog was outside?

A:      Not many; never outside alone.  I had seen him outside once or twice, but he was in her presence and she was restraining him by the collar, holding him.

Q:      What do you mean by the word restraining?

A:      He would be barking and, you know, kind of try to come forward.  And she would be holding the top of his collar, you know, restraining him.

¶31.    Ringo showed that the dog had exhibited dangerous propensities prior to the attack, and that the Defendants knew or reasonably should have known of this propensity or

12

disposition. The majority states that the dog simply barked around Ringo, but did not behave in a dangerous manner. However, the evidence shows that not only did the dog try to get out of its cage in a vicious manner to get to Ringo, but also had to be restrained on every occasion Ringo was in the dog's presence. Moreover, the dog exhibited dangerous tendencies to individuals other than Ringo, as the dog was not allowed to be petted or to be around children. A reasonable jury could find that the Defendants should have reasonably foreseen that the animal was likely to attack someone based on Ringo's testimony. The Defendants also argue that they were not negligent because they did not know when Ringo arrived to their house. If anything, this argument confirms notice to the Defendants, and implies that had they known the exact time Ringo would arrive, they could have prevented this dog attack.

¶32. The Defendants also argue that there was no attack because the dog did not actually bite or physically contact Ringo. However, "[l]iability may be imposed even where the animal does not actually come in contact with the victim. Thus, where the victim reacts to an animals' menacing behavior so as to harm himself or herself, the animals is considered to have injured the victim." 4 Am. Jur. 2d *Animals* § 77 (2007). In *Olier*, although the plaintiff was "nipped" by an attacking goose, the plaintiff injured her arm after she tripped over a bucket and fell during her attempt to flee from the goose chasing her. *Olier*, 164 So. 2d at 984 (¶2). Similarly, in *Farrior*, the plaintiffs were injured as the result of a fall they suffered while attempting to escape a chasing dog. *Farrior*, 562 P.2d at 784. The dog never made physical contact with the plaintiffs. *Id*. Here, although there was no physical contact, Ringo's encounter with the Defendants' dog still constitutes an attack under the

13

dangerous-propensity rule.

¶33.    Ringo testified about Collins's statements regarding the dog, to support her claim that the Defendants had actual or constructive knowledge of the dog's dangerous propensities or disposition.    Ringo also testified about prior incidents of the dog barking, behaving aggressively and viciously toward Ringo, as well as trying to get out of his cage to get at Ringo. Ringo offered more than sufficient proof to preclude the grant of summary judgment. In viewing the evidence in the light most favorable to Ringo, a jury could find that the Defendants are liable under the dangerous-propensity theory. I would reverse the trial court's grant of summary judgment on this issue and remand for further proceedings.

###    III.    The trial court erred by finding that the Defendants did not breach their duty to keep their premises reasonably safe as a matter of law.

¶34.    "In determining whether liability attaches to a landowner, this Court must determine (1) the status of the visitor, whether trespasser, licensee, or invitee; (2) the duty that the landowner owed to the visitor based on that status; and (3) whether the landowner breached his or her duty of care to the visitor." *Olier*, 164 So. 3d at 986 (¶10).  "The difference in classification is important; a landowner owes a much higher duty of care to invitees than he or she does to licensees." *Id.* at 986-87 (¶12).  An invitee is classified as a visitor who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. *Id.* at (¶14) (citing *Hoffman v. Planters Gin Co.*, 358 So. 2d 1008, 1011 (Miss. 1978)).  Here, the status of the visitor is not in dispute.  The parties agree that Ringo's status was that of an invitee.

¶35.    "The landowner owes an invitee the duty to keep the premises reasonably safe and

14

when not reasonably safe to warn only where there is hidden danger or peril that is not in plain and open view." *Id*. at 987 (¶12) (citing *Little ex rel. Little v. Bell*, 719 So. 2d 757, 760 (¶16) (Miss. 1998)). The crack along the driveway was not hidden; and it was in plain and open view. Thus, the Defendants had no duty to warn Ringo of the cracked and uneven driveway. The only issue is whether there is a genuine issue of material fact as to whether the Defendants negligently failed to maintain their premises in a reasonably safe condition.

¶36. Ringo claims that this crack or settled separation that ran across the driveway constituted a dangerous condition on the Defendants' premises. The driveway had been repaired, albeit unsuccessfully, at some point in the past. The expert noted this repair attempt by pointing out the different color concrete running the width of the driveway, which imputed constructive and actual notice of the cracked and uneven driveway to the Defendants.

¶37. The Mississippi Supreme Court has abolished the open-and-obvious theory as an absolute defense in premises-liability cases. *Tharp v. Bunge Corp*., 641 So. 2d 20, 25 (Miss. 1994). I would find that *Mayfield v. The Hairbender*, 903 So. 2d 733 (Miss. 2005), is instructive for this case. In *Mayfield*, the court applied the holding in *Tharp* to a similar set of facts to this case, where the plaintiff, Mayfield, while at the defendant's business, The Hairbender, tripped on pavement that she described as "broken, unlevel pavement, which was pushed up, probably jutted up two inches over the bottom step." *Id*. at 734 (¶3). This portion of raised asphalt was open and obvious and observed by the plaintiff prior to the fall. The court held:

> That a dangerous condition may be open and obvious has no nexus to a

landowner's alleged negligence for allowing the hazard to remain. And it does not eliminate the landowner's duty to maintain the premises in a reasonably safe condition. The question of whether an owner or occupier of a premises was negligent for failure to repair an alleged dangerous condition is ordinarily for the jury to decide.

To the extent Mayfield's case is based upon an allegation that The Hairbender failed to maintain its premises in a reasonably safe condition by its negligent failure to repair the raised asphalt, the fact that the hazard was "open and obvious" does not serve as a complete bar to recovery. In the event Mayfield convinces the jury that the raised asphalt constituted a dangerous condition which The Hairbender negligently failed to repair, the jury may find The Hairbender liable. However, the jury must compare The Hairbender's negligence for failure to repair the dangerous condition, to Mayfield's negligence for failing to protect herself from injury caused by an open an[d] obvious hazard, and reduce its award, if any, to Mayfield accordingly. Again, this exactly follows this Court's holding in *Tharp*.

*Id.* at 739 (¶¶27-28).

¶38. The majority noted that Ringo failed to refute the expert report of Frenzel, a safety consultant. However, Frenzel acknowledged the driveway's crack, resulting in an uneven elevation, and an attempted repair of the crack. Frenzel also stated that the crack was open and obvious, which is of no consequence since the open-and-obvious defense is no longer a complete bar to recovery.

¶39. Frenzel stated that Ringo walking backwards wearing slip-on footwear was a "disregard for her own safety" and "at-risk behavior." There was no reason for Ringo to refute the expert's report because it simply confirmed that this is a comparative-negligence case. In *Mayfield*, our supreme court stated: "Both [the] plaintiff and [the] defendant are claiming the other was negligent. In such cases, the jury must consider the alleged negligence of both and apply the comparative negligence standard. This was the exact holding in *Tharp*." *Id.* at 737 (¶19).

16

¶40. Similarly, the Defendants claim that Ringo was negligent in stepping backwards on uneven pavement while wearing slip-on footwear. Conversely, Ringo claims the uneven pavement constituted a dangerous condition, which caused her fall as she was retreating from the Defendants's charging dog. This factual dispute presents a jury question. Following our supreme court's holding in *Mayfield*, it is proper for the jury to determine whether the Defendants were negligent for failing to repair the allegedly dangerous crack in their driveway. *See id.* In doing so, the jury must compare the Defendants's negligence for failure to repair the dangerous condition, if any, to Ringo's negligence for failing to protect herself from injury caused by an open and obvious hazard, and reduce its award, if any, to Ringo accordingly. *Id.*

¶41. The majority opinion states that Ringo failed to state with confidence that she fell due to the crack in the driveway, and she could not identify what caused her imbalance. The majority cites *Knight v. Picayune Tire Serv. Inc*, 78 So. 3d 356, 359 (¶8) (Miss. Ct. App. 2011), in support of its opinion that cracks in a parking lot do not create an unreasonably safe condition. In *Knight*, this Court noted that the plaintiff could not identify exactly where she fell in the parking lot or what caused her to trip. *Id.* As a result, this Court held that the plaintiff did not establish that an irregularity in the parking lot created an unreasonably dangerous condition, which caused her to become injured. *Id.* Unlike the plaintiff in Knight, Ringo unequivocally testified that the uneven, cracked driveway caused her to trip and lose her balance as she retreated from the charging dog:

Q: All right. Did that uneven, cracked part play any role in your fall?

A: Yes.

17

Q:     What role did it play?

A:     It caused me to trip and lose my balance when I was stepping backwards.

¶42.   In viewing the facts in the light most favorable to Ringo, a genuine issue of material fact exists as to whether the Defendants negligently failed to maintain their premises in a reasonably safe condition.  Therefore, I would reverse the trial court's judgment on this issue and remand for further proceedings.

## CONCLUSION

¶43.   For these reasons, I would reverse the judgment of the trial court and remand for further proceedings.

**IRVING, P.J., JOINS THIS OPINION.**